IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDITH C. KLANDERUD,

    Plaintiff,

    v.

LOUIS DEJOY, POSTMASTER GENERAL OF THE UNITED STATES OF AMERICA

    Defendant.

Case No. 6:19-cv-00128-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    This action stems primarily from a workplace conflict where Plaintiff Judith Klanderud and a coworker accused each other of racist behavior. Upon receiving a written complaint regarding Plaintiff's behavior, Defendant United States Postal Service attempted to investigate the matter while temporarily separating the two workers. After an escalated confrontation where Plaintiff refused to relocate to another site for less than a day or take temporary administrative leave, Plaintiff was placed on emergency leave. Because Plaintiff cannot connect the actions of the Defendant, even assuming that they qualify as an adverse employment action, to any discriminatory or retaliatory motive, her claims associated with this incident are dismissed.

    Plaintiff also claims that she was denied overtime hours based on her age, race, and disability. Because the record, even viewed in the light most favorable to the Plaintiff,

establishes that Defendant accommodated Plaintiff's disability while providing her with overtime hours, this claim is dismissed.

## BACKGROUND[1]

Plaintiff brings claims of discrimination, wrongful termination, and retaliation, under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Rehabilitation Act of 1973. Pl.'s Third Am. Compl. ¶ 1, ECF No. 55 ("TAC"). Defendant moves for summary judgment on all claims. Def.'s Mot. Summ. J., ECF No. 32.

Plaintiff is a 69-year-old "person of color of Native American and mixed-race ancestry." TAC ¶ 2. Plaintiff has worked in various roles at the United States Postal Service (USPS) from 2000 to 2017. *Id*. In 2013, while working as a customer service clerk, Plaintiff was injured and underwent back surgery. *Id*. at ¶ 8. Plaintiff's injury affected her ability to "bend, twist, and lift heavy items." *Id.* at ¶ 10. In 2016, the USPS offered Plaintiff a position in "a permanent Modified Rehabilitation Assignment" as a "Modified Sales, Services/Distribution Associate" at the Salem Main Post Office in Salem, Oregon. TAC Ex. 1, at 1, ECF No. 56. The new position was "tailored to meet [Plaintiff's] physical needs." *Id.* Plaintiff's modified position allowed her to "resume her regular job duties [full time], including [overtime], as long as it is within her restrictions and… she is allowed to utilize mechanical aides, such as a rolling chair, to minimize bending." *Id.* at 3.

The Salem Post Office maintained a sign-up list for employees who desired overtime hours. TAC ¶ 15; Rice-Stitt Decl. DE, at 5, ECF No. 33. Most of the overtime occurred during the lunch hour or in the evening, but some early overtime was available before the post office

---

[1] The Court views the facts in the light most favorable to Plaintiff as the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

opened. This early overtime consisted primarily of placing mail in post office boxes. *Id*. at 6. Plaintiff consistently signed up on the overtime list and verbally requested early overtime in the post office box section. TAC ¶ 15; Rice-Stitt Decl. DE, at 6. Plaintiff was given the opportunity to work early overtime, but with her restrictions, was only able to fill some of the post office boxes. *Id*. at 5. While Plaintiff was not assigned early overtime after that, she was offered overtime hours at the Retail Window. *Id*. Younger white employees without disabilities were regularly assigned early overtime work. TAC ¶ 16.

There were several incidents when Plaintiff spoke up in response to what she considered unfair or discriminatory treatment. In 2017, Plaintiff felt her co-worker Helen Burros asked her to perform job duties that were "inconsistent with her modified duty assignment" and she raised those concerns to Sarah Jane Briski, a customer service supervisor. *Id.* Ms. Briski "ordered [Plaintiff] to leave her office, accusing her of 'yelling at Helen.'" *Id.* Also in 2017, Plaintiff raised concerns to management regarding "Ms. Burros' treatment of customers and fellow employees of color." *Id.* at ¶ 20. In August 2017, Plaintiff took issue with Ms. Burros' treatment of an African American customer because she "made a feigned attempt to find [the customer's] package, told him it wasn't there, and threw away his packing slip." *Id.* at ¶ 21. Plaintiff again brought her concerns to Ms. Briski, who took no action as far as Plaintiff knows. *Id.* at ¶ 22. In November 2017, Ms. Burros "berat[ed]" a Vietnamese clerk "in front of both customers and fellow post office clerks[.]" *Id.* at ¶ 23. The Vietnamese clerk "left the security door between the lobby and the window line open" while helping a customer, an act Plaintiff felt was allowed

under USPS policies. *Id.* Plaintiff told Ms. Burros "that she should not make a separate rule for this employee."[2] *Id.* at ¶ 24.

The conversations between Plaintiff and Ms Burros began to deteriorate, with Ms. Burros eventually filing a "request for [Equal Employment Opportunity (EEO)] counseling" against Plaintiff for "bullying due to [her] race." *Id.* at ¶ 26. On November 20, 2017, Kevin Hulett, the Salem Vista Post Office supervisor, asked Plaintiff to attend a meeting with him and Ms. Briski. *Id.* at ¶ 29. When Plaintiff inquired into the purpose of the meeting, "Mr. Hulett told [Plaintiff] that she 'didn't work there anymore.'" *Id.* at ¶ 30. USPS management had decided to move Plaintiff to the Salem Vista location while they investigated Ms. Burros' complaint. Def.'s Mot. Summ. J. 3. Defendant maintains that Plaintiff was told the temporary reassignment would only be for half a day. *Id.* at 6. Plaintiff admittedly "was so upset at the time [she] did not hear anything [Mr. Hulett] said." Pl's Second Am. Compl. Ex. 1, at 1, ECF No. 20. Mr. Hulett told Plaintiff that "she could either go to work at the Vista Post Office, go on unpaid leave, or use her leave time to get paid while she was on administrative leave." TAC ¶ 30. Plaintiff informed the manager that the new location was not "consistent with her Modified Rehabilitation Assignment, and that she intended to go back to her job at the customer service line." *Id.* at ¶ 32.

When Plaintiff began yelling and refused to leave the premises, she was placed on "immediate emergency off-duty status" and escorted out of the post office. *Id.* at ¶ 33; Rice-Stitt Decl. DE, at 16. Mr. Hulett "took [Plaintiff's] name badge and told her that she was no longer allowed on postal property." *Id.* at ¶ 34. Plaintiff was told "to await further instructions later that

---

[2] While Plaintiff states she addressed concerns about Ms. Burros' treatment of the African American customer with manager Ms. Briski, it is not clear whether she addressed her concerns regarding the treatment of the Vietnamese coworker with anyone other than Ms. Burros. *See* TAC ¶ 24. Additionally, outside of the exchange between Plaintiff and Ms. Briski, where Plaintiff said she felt Ms. Burros "had mistreated the customer because he was African American," Plaintiff does not cite any other specific incidents reported to management.

4 – OPINION AND ORDER

day or the next." Def.'s Mot. Summ. J. 3. The following day, Plaintiff filed a grievance with the postal union, and because of Mr. Hulett's comments, "instructed the post office to hold her mail." *Id.* at ¶¶ 36-37. Plaintiff also claims:

> Because her mail was on hold and she did not have voice mail on her telephone, and because she had been informed by her union representative that she did not need to communicate with USPS while her grievance was pending, she was not aware that the USPS had tried multiple time via letter and telephone to contact her in November and December 2017.

*Id.* at ¶ 38. Plaintiff did answer one of Defendant's many phone calls but hung up as soon as Supervisor Peterson identified herself. Rice-Stitt Decl. DE, at 135; Rice-Stitt Supp. Decl. DE, at 158, ECF No. 47. After numerous attempts to reach Plaintiff, including a welfare check by the police, the USPS "issued a Notice of Removal" on January 17, 2018, for "'Extended Absence Without Official Leave' and 'Failure to Follow Instructions.'" *Id.* at ¶ 39; *see* Rice-Stitt Decl. DE, at 135-39. Plaintiff initiated a claim of discrimination with the EEO on January 5, 2018. TAC Ex. 2, at 1.

## **STANDARDS**

The Court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews the evidence and draws inferences in the light most favorable to the non-moving party. *Miller*, 454 F.3d at 988(quoting *Hunt*, 526 U.S. at 552). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## **DISCUSSION**

Plaintiff's claims of wrongful termination, discrimination, and retaliation all use the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). A plaintiff must first make a prima facie case that Defendant wrongfully terminated, discriminated, or retaliated against her. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505-07 (1993); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993); *Reynolds v. Brock*, 815 F.2d 571, 574 (9th Cir. 1987). Once the plaintiff establishes a prima facie case, Defendant must demonstrate a legitimate, nondiscriminatory reason for their actions. *McDonnell Douglas*, 411 U.S. at 802–04. The burden then returns to the plaintiff, who must show that the proffered nondiscriminatory reason is pretextual. *Id.* Pretext is established if Plaintiff shows "directly…that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citation omitted). The Court uses this framework for each of Plaintiff's claims.

## **I. Wrongful Termination**

For a prima facie case of wrongful termination under Title VII, the Rehabilitation Act of 1973, and the ADEA, "[Plaintiff] must demonstrate both (1) that she is [qualified for the position she is in] and (2) that she was terminated because of her [race or color, age, or disability]. *Reynolds*, 815 F.2d at 574 (citation omitted); 29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000e-2(a); *see also St. Mary's Honor Ctr.*, 509 U.S. at 505-07; *Hazen Paper Co.*, 507 U.S. at 612.

Here, there is no indication that Plaintiff was not qualified for her position, leaving only the motivation for the termination at issue. TAC ¶ 1; *see* Def.'s Mot. Summ. J. 15. Defendant argues that Plaintiff was terminated for abandoning her job "[a]fter all efforts to contact [her] failed." *Id*. at 7. The Court agrees.

Defendant took several steps to contact Plaintiff to let her know she could come back to work, including multiple phone calls, letters, and a health and wellness check by the police department. Rice-Stitt Decl. DE, at 135-36. However, Plaintiff admits she cut off all communication with the post office. TAC ¶ 38. As a result, Defendant terminated Plaintiff's employment nearly two months after she was put on unpaid administrative leave. *Id.* at ¶ 39. Plaintiff argues the basis for her termination was her race, age, and disability, but there are no facts that support that conclusion. *Id.* at 1. Because Plaintiff cut off communication with the USPS, Defendant had a legitimate, nondiscriminatory reason to terminate Plaintiff for job abandonment. *See* Rice-Stitt Decl. DE, at 135-39. While Plaintiff argues that the reasoning for her termination is "pretext to hide the Defendant's discriminatory animus," she provides no evidence to support that claim. *Id.* at ¶ 52. Plaintiff's wrongful termination claims fail.

## II. Discrimination

To establish a prima facie case of discrimination based on age, disability, or race, Plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)). Because Defendant provides no evidence to the

contrary, the Court assumes Plaintiff is a member of a protected class based on race, age, and disability, and she is qualified for her position. TAC ¶ 1; *see* Def.'s Mot. Summ. J. 15.

Plaintiff identifies four adverse employment actions: she was (1) denied overtime opportunities, (2) reassigned "to a less desirable work location," (3) placed on unpaid administrative leave, and (4) terminated.[3] TAC ¶¶ 50, 56. As noted above, Plaintiff was not wrongfully terminated. Even assuming the temporary reassignment and emergency placement were adverse employment actions, Plaintiff does not show how "similarly situated individuals outside h[er] protected class were treated more favorably."[4] *Fonseca*, 374 F.3d at 847 (quoting *Peterson,* 358 F.3d at 603). Further, Defendant offers a legitimate, nondiscriminatory reason for USPS management's actions: Plaintiff was reassigned to another location due to an ongoing EEO investigation, and once she refused the reassignment and refused to leave, she was placed on unpaid administrative leave. Def.'s Mot. Summ. J. 3–4. Plaintiff provides no facts to support her claim that these actions were pretext. *See* TAC ¶¶ 52, 57.

Plaintiff argues that Defendant discriminated against her by not assigning her early overtime hours, based on her race, age, and disability. However, Plaintiff has provided no facts to suggest racial or age-based discrimination. Rather, Defendant explicitly stated that Plaintiff was not given early overtime because of her limitations due to her disability. Rice-Stitt Decl. DE, at 6. Ms. Briski asked Plaintiff if she could reach the lower post office boxes, and Plaintiff stated that "she would be outside her restrictions." *Id*. at 5. Ms. Briski did not want to "put [Plaintiff] in

---

[3] Plaintiff also maintains that "USPS employees repeatedly thwarted her efforts" to recover workers' compensation for her previous injury on the job. TAC ¶ 13. The Court has already ruled that it does not have jurisdiction over the worker's compensation claims in this case. Op. Order, ECF No. 24.

[4] Plaintiff does point to the fact that USPS management "took no action with respect to [Plaintiff's] complaints against Ms. Burros" as retaliation, but there is no indication that Plaintiff filed a formal complaint, like Ms. Burros, prior to leaving the USPS in November 2017. *Id.* at ¶ 27.

8 – OPINION AND ORDER

a situation where she could further injure herself on the job," but "did schedule her for overtime at the Retail Window whenever possible." *Id*. Indeed, Plaintiff worked an average of 8–9 hours of overtime each two week pay period in 2016 and 2017. Cavanaugh Decl. Ex. A, at 1, ECF No. 59. Still, Plaintiff maintains that she "could reach all of the P.O. Boxes" and "[t]o the extent that she was not able to do so, USPS could have allowed her the use of a rolling chair as a reasonable accommodation, which the USPS denied her." TAC ¶ 17. While Plaintiff was not assigned early overtime due to her restrictions, she was given opportunities to work overtime hours at the Retail Window as a reasonable accommodation. "An employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal quotations and citation omitted).

## **III. Retaliation**

Plaintiff also brings claims for retaliation under Title VII and the Rehabilitation Act of 1973. For a prima facie case of retaliation, an employee must establish: (1) her involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001). Once a claim of retaliation has been established, the burden shifting framework is applied. *Id.* at 970*; see McDonnell Douglas*, 411 U.S. at 802, 804.

An employee has engaged in a protected activity if she "protest[s] or otherwise oppose[s] unlawful discrimination." *Emeldi v. Univ. of Oregon*, 673 F.3d 1218, 1225 (9th Cir.) (internal quotations and alterations omitted). For claims of retaliation, an adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234,

9 – OPINION AND ORDER

1242–43 (9th Cir. 2000). In establishing a causal link between the protected activity and adverse employment action, an employee must prove the employer's "desire to retaliate was the [but for] cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013). Causation may be inferred from the timing when "an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Here, Plaintiff claims of retaliation fail because she does not provide facts that she suffered an adverse employment action linked to a protected activity. Plaintiff argues she engaged in three protected activities: (1) seeking backpay for the time when she was unable to work due to her workplace injury; (2) "attempt[ing] to document the discriminatory denial of opportunities for overtime"; and (3) "complain[ing] to management about racial discrimination and harassment in the workplace." TAC ¶¶ 66, 72, 73. Plaintiff argues that because of her participation in the above protected activities, Defendant "reassign[ed] her to a less desirable work location at the Salem Vista Post Office, plac[ed] [Plaintiff] on unpaid administrative leave, and terminat[ed] her employment." *Id.* at ¶¶ 68, 74.

Plaintiff has failed to demonstrate a nexus between her protected activities and the adverse employment actions. Plaintiff's final conversation with Defendant regarding her request for backpay was in April 2017. TAC ¶ 13. Plaintiff does not identify a time prior to the November 20, 2017 incident where she documented her complaints regarding overtime; she mailed a grievance on November 21, 2017 and filed an EEO complaint on April 17, 2018. *Id.* at ¶¶ 36, 42. Plaintiff's complaints to management regarding Ms. Burros' treatment of the African American customer were in August 2017, and Plaintiff does not allege that she brought the

November 2017 incident with the Vietnamese employee to the attention of management. Id. at ¶¶ 21–24. None of these are close enough in time to infer causation between the supposed protected activity and the adverse employment actions, especially considering Ms. Burros' official complaint was filed just five days prior to the precipitating incident.

Further, as addressed above, Defendant proffers legitimate, nondiscriminatory reasons for the adverse employment actions. Defendant temporarily reassigned Plaintiff to the Salem Vista Post Office so that they could investigate Ms. Burros' complaint. Plaintiff was put on administrative leave when she refused to leave the building. Plaintiff was terminated because she cut off all contact with her employer for nearly two months. Plaintiff only offers that "[t]he stated reasons for the Defendant's conduct were not true reasons, but instead were pretext to hide the Defendant's true motivation of retaliation for Plaintiff's protected activities." TAC ¶ 75. While Plaintiff's comment to Ms. Burros may have been the catalyst for Ms. Burros filing a formal complaint against her, Defendant's actions are linked to Ms. Burros' complaint, not Plaintiff's opposition to allegedly discriminatory conduct. *Id*. at ¶ 26.

## **CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment (ECF No. 32) is GRANTED.

IT IS SO ORDERED.

DATED this 29th day of June, 2021.

                                                                           /s/ Michael J. McShane
                                                                              Michael McShane
                                                                     United States District Judge